IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-01186-WDM

WANBLE WINTERHAWK,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Miller, J.

     Claimant Wanbli Winterhawk (Winterhawk) appeals a final administrative decision by defendant Michael J. Astrue[1] (the Commissioner) finding that he is not disabled within the meaning of the Social Security Act.

<u>Background</u>

     Winterhawk was born in 1950 as William Randall Buerger.  In June 1997, he changed his name to Wanbli Wakan Winterhawk.  Winterhawk has attended four or more years of college (Admin. R. at 53.)  He has worked in the vocationally relevant past as a cashier, campground manager (generally performed at the heavy exertional level but performed by Winterhawk at the light exertional level), and a facility

---

[1] This case was originally brought against JoAnne B. Barnhart in her official capacity as Commissioner of Social Security, but on February 12, 2007, Michael J. Astrue became the new Commissioner.  Therefore, pursuant to Fed. R. Civ. P. 25(d)(1) he is automatically substituted as a party and this case will proceed in his name.

PDF Final

maintenance person and landscaper.  He was last insured for disability benefits on June 30, 2007.  *See Henrie v. U. S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir.1993) (stating claimant must establish onset of disability prior to date insured status expired).  Winterhawk alleges that he became disabled on September 7, 2002, the date he last worked.

1.    Procedural History

        Winterhawk filed an application for disability benefits on January 8, 2003 alleging that he had been disabled since September 3, 2002 (the date of onset was amended at the hearing to September 7, 2002).  The claim was denied and on August 13, 2003, Winterhawk made a timely request for a hearing.  A hearing was held before an Administrative Law Judge (ALJ) on November 10, 2005 in Pueblo, Colorado.  At the hearing, Winterhawk was advised of his right to a representative, but chose to continue the proceeding without representation.  The ALJ issued her ruling on November 22, 2005 finding that Winterhawk was not disabled within the meaning of the Act because he retained the Residual Functional Capacity (RFC) to engage in his past relevant work as a cashier and a campground manager (performed at the light exertional level, as Winterhawk actually performed it).  The Social Security Appeals Council declined review of the ALJ's decision on April 19, 2006.  Therefore, the ALJ's decision is the final decision of the Commissioner for review in this Court.

2.    Medical History

        In 1973, Winterhawk sustained a severe injury to his left leg and ankle which included seven broken bones.  The injury was repaired with screws, a plate, and a rod,

although it appears that there were some issues with healing after surgery.  His left leg is shorter than his right and he contemplates whether this contributes to his lower back pain.  In 1992, after scraping his left knee, his knee became infected and he had open wounds on his leg.  Winterhawk completed two rounds of antibiotics to cure the infection although he believes that his infection may not be completely healed and may be contributing to his feelings of fatigue and decreased stamina.

Winterhawk then suffered a spinal injury in 1985 when a mudboard fell on his head while he was working.  This injury caused a reverse curvature in his spine.  He alleges that medical treatment was cut short, resulting in a permanent impairment.  Indeed, he has been diagnosed with degenerative disc disease of the cervical spine.  Additionally, his back often "goes out."  These episodes cause Winterhawk a substantial amount of pain and, although previously relatively temporary, now take several weeks or months to heal.  He wonders if his spinal problems are contributing to or causing his lower back pain.

Then, in 1990 and 1991, Winterhawk injured his right elbow, both knees, and left ankle.  The most severe injury during this time was in May 1991 when he slipped off a snow plow and landed hard on both of his legs, injuring both knees and his left ankle.  He believes that this incident continues to cause him severe pain and limited functionality in his knees and left ankle.  Although Winterhawk does not experience constant pain from these injuries, the pain occurs frequently.

Winterhawk has been having chest pains for most of his life although he normally treats the chest pain by thumping on his chest.  In 1996 he was hospitalized

with a heart problem and diagnosed with a bicuspid aortic valve.  After he broke his sternum in 2002, his chest pains became much worse.  In 2005 he was diagnosed with aortic regurgitation and had aortic valve replacement surgery.

Additionally, Winterhawk was diagnosed with carpal tunnel syndrome in 1985. His thumb joints have recently begun hurting due to this ailment.  Winterhawk also alleges that he has severe pain in his back, knees, left leg, and left ankle.  He claims that he is bed-ridden most of the time and is unable to do any work.

## Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards.  *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

When viewing Winterhawk's arguments, I must construe his pleadings liberally and hold him to a "less stringent standard" because he is proceeding *pro se*.  *Hall v. Bellmon*, 935 F.2s 1106, 1110 (10th Cir. 1991).

## Discussion

The Secretary has established a five-step evaluation process to determine whether a claimant is disabled for purposes of the Social Security Act.  *See Williams v.*

*Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing [his] past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

Following this process in this case, the ALJ first found that Wood stopped working on September 7, 2002.  In step two, the ALJ identified degenerative disk disease of the cervical spine as a severe impairment, but found that the objective evidence did not support a "severe" finding for lower extremity pathology, lower back condition, respiratory deficit, or cardiac ailment.  (Admin. R. at 16.)  In step three, the ALJ found that these impairments did not meet any of the relevant listings.  The ALJ specifically stated that Winterhawk's impairments did not meet the criteria for a 1.00 Musculoskeletal System impairment noting that Winterhawk's "impairment does not show the degree of joint deformity, never damage, muscle weakness, and inability to ambulate effectively that is required."  (Admin. R. at 17.)  The ALJ then determined Winterhawk's Residual Functional Capacity (RFC), concluding that Winterhawk retained the ability to "perform light exertional work; which does not require more than occasional bending, squatting, crouching or crawling; which does not require standing or walking for more than a combined three to four hours in a normal workday; and with no requirement for more than occasional overhead reaching and lifting."  (Admin. R. at 20).  Based on this RFC, the ALJ concluded at step four that Winterhawk was capable of performing his past relevant work as a cashier and campground manager.

Therefore, the ALJ found that Winterhawk was not disabled within the meaning of the Social Security Act.

In his appeal to this Court, Winterhawk merely annotates the ALJ's decision. This makes understanding his arguments on appeal somewhat difficult.  However, because a *pro se* party's pleadings are liberally construed, I review many arguments that Winterhawk does not completely or clearly develop.

1.    Assistance of Counsel

Winterhawk argues that his appearance at the hearing without his attorney present caused the ALJ to determine that he was not disabled.  He alleges that an officer of the court told him at the hearing "the way things go, is that if you have an attorney, you would win; if you didn't have an attorney, you'd automatically loose [sic]." (Pl.'s Reply Br. at 4.)  Apparently, Winterhawk agrees with this statement as he is now claiming that "[t]he Judge made her decisions because my attorney wasn't present and she figured that she'd get away with this."  (Pl.'s Opening Br. at 21).  Winterhawk's attorney was not at the hearing because the Office of Hearings and Appeals (OHA) failed to notify the attorney of the date, time, and place of the hearing.  (Court Ex. 3.) The Commissioner responds by noting that although Winterhawk's attorney was not present at the hearing, Winterhawk waived his right to counsel after the ALJ properly and repeatedly advised him of his right and the benefits thereof.  The ALJ stated:

> You are entitled to have a representative to represent you at these proceedings.  The representative could be a lawyer, but it doesn't have to be a lawyer.  It needs to be somebody who's very very knowledgeable about Social Security laws and regulations and procedures, and how these

decisions must be made according to the law.  A representative can be very helpful.  He or she can go through your file with you, make sure everything is in there that's relevant to my decision and if there's anything that's missing, can make sure you get a hold of it and get it sent to us, and/or at least that we know what it is and where to find it, and how to get it to get it into the file before I make any decisions in your case.  A representative can help you to understand what types of benefits you might be eligible for or not eligible for, and what you would have to prove in order to show that you're entitled to those benefits.  A representative can help you to present your testimony, make sure something doesn't get left out just because you don't know that it's important or you jut forget to say it, and can be very helpful in helping to cross-examine the vocational expert or medical expert or anybody else who appears to testify at the hearing."

(Admin. R. at 168–69.)  The Commissioner also argues that both the notice of initial denial and the notice of receipt of request for a hearing included a written statement of Winterhawk's right to counsel, the benefits of counsel, options for obtaining a lawyer, and the availability of free legal services.

A social security benefits claimant is entitled to representation during the social security proceedings.  20 C.F.R. § 404.1700.  The regulations further provide that if the Social Security Administration (SSA) makes an adverse decision about a claimant's benefits, they are obligated to advise the claimant in the notice of adverse decision about the right to representation, options for obtaining an attorney, and the availability of free legal services if conditions are met.  *Id.* § 404.1706.  The statute, regulations, and cases do not, however, require more than advisement of the right to representation in notices and an advisement at the hearing.  *See Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996) (holding that advisement in notices and off the record advisement at the hearing was sufficient).  Furthermore, "a claimant who, advised of his right to

attorney representation, proceeds on his own, and receives a full and fair hearing of his claim, is not entitled to have the cause remanded to the Secretary for further proceedings when he thereafter retains counsel." *Garcia v. Califano*, 625 F.2d 354, 356–57 (10th Cir. 1980).

In this case, Winterhawk was advised of his right to counsel and the benefits of representation three times, once at the hearing itself.  He, however, decided to continue on with the hearing without his attorney present.  He now claims, "I should have postponed the hearing until they informed my attorney of the hearing, but that's in hindsight and I don't have the experience to know that that's what I should have done." (Pl.'s Opening Br. at 45.)  Remand is not appropriate, however, when a claimant merely wishes they had made a different decision at the hearing with respect to representation. *See Garcia*, 625 F.2d at 356–57.  Therefore, Winterhawk should not be granted remand based on this argument.

Winterhawk appears to also argue that he is entitled to remand because, even though he waived his right to counsel at the first hearing, his attorney's absence was caused by the SSA.  The OHA has admitted that they were responsible for notifying Winterhawk's attorney of the date, time, and place of the hearing and that they failed to do so.  (Court Ex. 3.)  Commissioner does not address whether this mistake by the OHA changes the result for Winterhawk on his right to representation claim.  However, the mistake does not change the fact that Winterhawk was fully advised of his right and the benefits thereof.  Regardless of the cause of the attorney's absence, Winterhawk made an informed decision to continue with the hearing without representation. I also

note that his reason for wishing to proceed rather than reschedule the hearing was a choice of personal convenience: he didn't want to make another trip for a hearing. Therefore, remand is not appropriate based on this argument.

## 2.  Finding "severe" impairments at step 2

Winterhawk argues that the ALJ improperly decided that some of his medical problems and complaints were not "severe" impairments.  The ALJ found that degenerative disc disease of the cervical spine was a severe impairment but that lower extremity pathology, lower back condition, respiratory deficit, and cardiac ailment were not severe impairments.  Winterhawk alleges that his lower back condition and cardiac ailment are "severe" impairments.  However, Winterhawk's argument consists solely of his own subjective interpretation of the severity of his medical problems and does not include any citations to medical opinions to support his argument.[2]

A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Severity determinations are based on medical evidence alone.  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).  All that is required at step two is a "de minimus" showing of a significant limitation.  *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (citing *Williams*, 844 F.2d at 751).

---

[2]  It appears from Winterhawk's arguments that he may not understand the step two determination of "severe" impairment as it is defined by the SSA.  He appears to take great offense to a finding that his medical problems are not severe and appears to focus on the general meaning of the word "severe" rather than the meaning within the SSA regulations.  *See* 20 C.F.R. § 404.1520(c) (defining severe impairment as one that "significantly limits . . . physical or mental ability to do basic work activities").

With respect to his lower back pain, Winterhawk alleges that "the degenerative change in [his] spine is what has been causing [his] severe back problems" and that his back pain often "drops [him] to the ground" such that he can't move.  (Pl.'s Opening Br. at 10.)  However, the ALJ found that degenerative disc disease was a severe impairment, but that lower back pain, as a separate impairment, was not severe. Winterhawk is essentially arguing that a symptom of a severe impairment is a separate severe impairment.  Such circular reasoning is without merit.

Winterhawk appears to also allege that his left leg problems are a severe impairment.[3]  The ALJ found that there was "no evidence of range of motion limitations in the knees" and "no radiologic evidence of degenerative joint disease in the lower extremities."  (Admin. R. at 16.)  The ALJ also noted that Winterhawk had sought treatment for "an infected wound on his left leg" but disregarded this impairment because "no follow up laboratory work was completed."  *Id.*  Winterhawk points to no medical evidence of a lower extremity impairment and only make subjective allegations of pain in his leg.  A review of the record also reveals no medical evidence to find the ALJ's determination unsupported by substantial evidence.

Finally, Winterhawk alleges that his cardiac problems are also a severe impairment.  The ALJ noted that Winterhawk had undergone cardiac surgery but observed that the symptoms causing Winterhawk to get treatment for his heart only began two months prior to surgery.  Further, the ALJ found that "there are no patient

---

[3]  The extent of Winterhawk's argument with respect to his lower extremity problems is to underline the ALJ's findings (Pl.'s Opening Br. at 9), and allege that he has "severe pain in both [his] knees, [his] left ankle & [his] back."  *Id.* at 12.

records that support that his symptoms remained disabling for a period of [twelve] consecutive months." (Admin. R. at 16.)  Therefore, the ALJ found that Winterhawk's cardiac problems were not severe because they failed to meet the durational requirement.  To support his argument that his cardiac problems met the durational requirement Winterhawk merely alleges that he has had "increased chest pain for two year[s] at the time of this hearing" and that prior to surgery he was experiencing "extreme fatigue and shortness of breath resulting in an inability to work or do much of anything."  (Pl.'s Opening Br. at 10.)

Although Winterhawk does not cite to the administrative record to demonstrate that his cardiac problems have been disabling for more than twelve months, I have reviewed the administrative record and have determined that there are a number of places that the medical records indicate that Winterhawk had cardiac trouble for more than the two months preceding his surgery.  (*See, e.g.*, Admin. R. at 86 ("hospitalized in '96 for heart problem"); 93 (April 28, 2003 report indicating chest pain); 110 (chest pain throughout life and "worsening now"); 116 ("aortic regurgitation since 1996"); 120 (recognition of 1996 cardiac problem); 127 (chest pain that "has been going on for his lifetime"); 134 (chest pain for past few years)).  Although this may not be sufficient to make a de minimus showing of a severe impairment, the ALJ had a duty to explain her decision that an impairment was not severe and to explain his rejection of contradicting medical evidence.  *Alvin v. Grogan*, 399 F.3d 1257, 1262 (10th Cir. 2005) ("'[T]he ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.'" (quoting *Clifton v. Chater*, 79 F.3d 1007,

1010 (10th Cir. 1996))).  Therefore, the ALJ erred in not discussing the evidence in

Winterhawk's medical records indicating that Winterhawk had heart-related problems

and symptoms of a cardiac ailment for more than twelve months.

However, arguably step two is merely a threshold, and that so long as his case

survives step two, a claimant is not prejudiced by an ALJ's failure to list a particular

impairment as severe.  *See Williams*, 844 F.2d at 751 (explaining that if a claimant

succeeds in making a sufficient "threshold showing" at step two, "the decision maker

proceeds to step three"); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (holding

that ALJ's failure to find that claimant's obesity was a severe impairment could not have

prejudiced her at step two because that step was resolved in her favor).  In this case,

Winterhawk's evaluation progressed beyond step two because the ALJ found that

degenerative disc disease of the cervical spine was a severe impairment.  Furthermore,

although not finding Winterhawk's other impairments severe, the ALJ specifically noted

that she considered these impairments when determining Winterhawk's RFC.

Therefore, the ALJ's failure to adequately address the medical records regarding

Winterhawk's cardiac ailment does not warrant remand.[4]  *See Lewis v. Astrue*, 2007

U.S. App. LEXIS 19470, at *5-6 (9th Cir. July 3, 2007) (holding harmless error when the

ALJ failed to consider a medical impairment at step two but adequately considered the

impairment at step four).

3.  RFC

----

[4]  I do note, however, that the ALJ could have more fully explained her
evaluation of Winterhawk's cardiac ailment or even developed the record further with
regard to this  ailment.  *See* 20 C.F.R. § 404.1527(c)(3)–(4).

Winterhawk's main argument is that the ALJ improperly determined his RFC by finding he was able to perform more functions than he actually could.  To support this argument, Winterhawk alleges that the ALJ inappropriately accorded too little weight to his subjective descriptions of his pain and disregarded certain medical opinions. Finally, Winterhawk argues that all of his impairments, in combination, do not allow him to perform at the level indicated in his RFC.

*a. Credibility*

Credibility determinations are peculiarly the province of the finder of fact and the ALJ is accorded substantial deference in these matters.  *Williams*, 844 F.2d at 755. Factors the ALJ should consider when determining whether a claimant's description of her pain or other symptoms are credible include:

> 1. the individual's daily activities; 2. the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. factors that precipitate and aggravate the symptoms; 4. the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (citing Soc. Sec. Rul. 96-7P); *see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (listing other factors including frequency of medical contacts; witness testimony, including potential bias; and consistency of nonmedical evidence with objective medical evidence).  In reviewing an ALJ's credibility determination, the court is not to reweigh the evidence.  *Hamilton v.*

*Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992). "[D]isability requires more than mere inability to work without pain[;] '[t]o be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'" *Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir. 1986 ) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)).

In this case, the ALJ explicitly considered Winterhawk's allegations of disabling pain, weighing both the medical and non-medical evidence and explaining her conclusions.  (Admin. R. at 18-19.)  In her explanation of why she found Winterhawk's allegations less than fully credible, the ALJ noted that the medical records indicated a normal range of motion; no evidence of muscle weakness, guarding, spasm, or tenderness; a normal gait; no pain in the knee; and ambulation without difficulty. (Admin. R. at 19.)  The ALJ also explained that Winterhawk's ability to care for himself, infrequent medical visits, and limited use of pain medication all indicated that Winterhawk's pain was not a severe as he claimed.  *Id.*  Finally, the ALJ noted that his muscle strength and activities (including lifting a snowmobile) were incompatible with his claims of being bed-ridden for the majority of three years.  *Id.*  Therefore, the ALJ concluded that Winterhawk's pain was not completely disabling.  Winterhawk points to no medical evidence and cites only his subjective allegations of severe pain to show that the ALJ was mistaken in concluding that his pain was not completely disabling.  I find that the ALJ properly considered relevant factors and that her credibility determination is due deference as supported by substantial evidence.

*b. Medical Opinions*

An ALJ is required to consider submitted medical opinions in addition to the evidence as a whole.  20 C.F.R. § 404.1527(b).  Generally, treating source opinions are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in the case file."  *Id.* § 404.1527(d)(2).  When a treating source opinion is rejected completely, the ALJ must give "specific, legitimate reasons for doing so."  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citation omitted). Treating sources that are not given controlling weight and all other medical opinions are weighed by evaluation of a number of factors: (1) examining relationship; (2) treatment relationship including the length of relationship and frequency of examination and the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; (6) any other relevant factors.  *Id.* § 404.1527(d). Medical opinions that a claimant is disabled or unable to work are not dispositive of the determination of disability because that determination is reserved for the Commissioner.  *Id.* § 404.1527(e).  However, the medical evidence that a medical source relies upon in concluding that a claimant is disabled is considered in the disability determination.  *Id.*

In this case, Winterhawk complains that the ALJ did not give sufficient weight to a consultative examination by Dr. Callen performed in April 2003 in which Dr. Callen concluded that Winterhawk was "disabled on the basis of his multiple orthopedic

problems.[5]  The ALJ disregarded Dr. Callen's findings because she found they were

based solely on Winterhawk's subjective complaints and not supported by Dr. Callen's

own "minimal findings."  (Admin. R. at 19–20.)  The ALJ noted Dr. Callen's findings that

Winterhawk had "somewhat diminished range of motion in the neck . . . and he could

reach about half way down to touch his knees."  *Id.* at 16.  Additionally, the ALJ noted

that Dr. Callen had found that radiographs demonstrated cervical degenerative disc

disease and "minor lumbar degenerative changes" and X-rays showed "old healed

fractures of the tibia and fibula, with metallic screw fragments and some deformity."  *Id.*

Dr. Callen's opinion, as a consultative examination, is not afforded controlling

weight, but rather his opinion is evaluated on the factors listed in 20 C.F.R. §

404.1527(d).  Although Dr. Callen's opinion is not a treating source opinion, the ALJ

articulated a specific reason for rejecting it—the discrepancy between the final opinion

and the medical findings included in Dr. Callen's report.  A medical opinion may be

disregarded when "his conclusions are not supported by specific findings."  *Castellano*

*v. Sec'y Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (addressing

rejecting a treating source opinion).  Dr. Callen's medical evidence consisted solely of a

physical examination which demonstrated only some limited range of motion in the

neck, back, and knees; and a radiology report that indicated spinal degeneration, "mild

degenerative change" in the lumbar, and a healed fracture in the lower left leg that had

---

[5]  Winterhawk complains mainly that the doctor's recommendation that he be considered disabled was disregarded.  However, as Winterhawk is proceeding *pro se* I will address the full argument that Dr. Callen's opinion was not given sufficient weight as a whole.

"questionable deformity" but appeared to be in "good position."  (Admin. R. at 93–98.)

Therefore, there is substantial evidence on the record to support the ALJ's conclusion.

Furthermore, Dr. Callen's opinion that Winterhawk was disabled is not controlling

because the determination of disability is reserved for the Commissioner.  *Id.*

§ 404.1527(e).

Winterhawk also argues that the ALJ erred in not affording appropriate weight to

two medical statements which were completed to evaluate Winterhawk's eligibility for

Colorado's Aid to the Needy Disabled program.  The reports from August 2003 and

March 2004 both indicated that Winterhawk was "disabled to the extent [he is] unable

to work at **any** job for a total period of six (6) or more months due to a physical or

mental impairment that is disabling."  (Admin. R. at 161, 163 (emphasis in original).)

The ALJ afforded these medical opinions no weight because the records contained no

"explanation of the standards used to determine that the claimant was disabled or the

specific limitations that support such statements" and the "time-limited nature of the[]

statements."  *Id.* at 20.  Winterhawk argues that it was improper for the ALJ to disregard

these opinions and their conclusions.  However, the ALJ appropriately explained her

decision to afford the statements no weight and this decision is supported by the

evidence.  Furthermore, an ALJ is not permitted to accept an opinion of disability as

that determination is reserved for the Commissioner.  20 C.F.R. 404.1527(e).

Finally, Winterhawk alleges that the ALJ improperly afforded no weight to the

opinions of Dr. Grover and Dr. Keith in their July 2005 assessment of Winterhawk after

his cardiac surgery.  Dr. Grover and Dr. Keith provided discharge instructions to

Winterhawk after his heart surgery including "no heavy lifting greater than 5 to 10 pounds." (Admin. R. at 112.)  The ALJ afforded this restriction no weight because the "restrictions appear to have been based upon the claimant's recent cardiac surgery and do not reflect long-term functional limitations" and because Winterhawk himself stated that he did not consider himself disabled based on his cardiac ailment. *Id.* at 20. Winterhawk simply argues against the ALJ disregarding this opinion.  However, the ALJ properly considered the examining relationship, the nature and extent of the medical opinion, the doctors' specialization, and the context in which the statement was made. *See* 20 C.F.R. § 404.1527(d).  Therefore, the ALJ's conclusion is supported by substantial evidence.

*c. RFC restrictions*

Winterhawk also generally alleges that the ALJ's RFC is incorrect.  However, he cites no support for this argument beyond his own subjective feelings of what he is capable of doing.  The ALJ indicated what medical opinions she was considering, the evidence that supported her finding, the evidence that she was rejecting, and considered all impairments, whether severe or not, in making her determination of Winterhawk's RFC.  Therefore, remand is not appropriate based on this argument.

4.  Meeting criteria for 1.00 Musculoskeletal System at step three

Winterhawk alleges that his impairments meet the criteria for a musculoskeletal system impairment and he should have been considered disabled at step three.  He also appears to argue that he meets the requirements for cardiovascular system impairment as he has included a copy of the listing in his brief.  The ALJ only

specifically discussed whether Winterhawk met the musculoskeletal impairment listing. In particular, the ALJ concluded that Winterhawk's impairment did not show "the degree of joint deformity, nerve damage, muscle weakness, and inability to ambulate effectively that is required." (Admin. R. at 17.)  The ALJ made no reference to the evidence nor further explained her conclusions that Winterhawk did not meet the criteria. Furthermore, the ALJ did not even discuss the cardiovascular system listing.

A claimant bears the burden at step three to establish that his impairments meet or equal the listed impairments.  *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).  The ALJ is required to "discuss the evidence and explain why" she concluded that the evidence did not support a finding of disability at step three.  *Id.* at 733 (citing *Clifton v. Chater*, 79 F.3d 1009, 1009 (10th Cir. 1996)).  As noted, the ALJ failed to do so.  However, when the evidence at step four and five of the evaluation "confirm the step three determination" then remand is unnecessary.  *Id.*  Therefore, because the ALJ properly considered all impairments at step four (indeed, she explicitly stated twice that she considered all impairments), Winterhawk is not entitled to remand based on a step three error to not consider whether he met the cardiovascular listing.

5.  Past Relevant Work

Winterhawk finally alleges that the ALJ erred in determining what his past relevant work was and whether he could still perform these occupations.  First, Winterhawk states that his only past relevant work was as a mason.  However, the vocational expert and the ALJ found that Winterhawk's past relevant work included a

cashier, a campground manager, and a landscape and maintenance person.  Past relevant work is defined as "work that [the claimant] has done within the past [fifteen] years, that was substantial gainful activity, and that lasted long enough . . . to learn to do it."  20 C.F.R. § 404.1560(b).  The finding that Winterhawk's past relevant work included work as a cashier and campground manager is supported by substantial evidence on the record.  Winterhawk himself admitted that he was a cashier for over a year and acted as a campground manager for three months at a time for four years.

Winterhawk next alleges that he is unable to work as a cashier because of his pain.  However, "disability requires more than mere inability to work without pain[;] '[t]o be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'" *Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir. 1986 ) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)).  Furthermore, the ALJ discredited Winterhawk's allegations of disabling pain.

Winterhawk also alleges that the job of campground manager was improperly considered as a job because it only lasts three months a year.  However, the ALJ concluded that this was one of two past relevant jobs that Winterhawk was able to perform given his RFC.  The issue is not how long he worked, but rather the physical demands of the job.

In summary, Winterhawk's arguments regarding his past relevant work at step four do not merit remand.

<u>Conclusion</u>

Based upon my review of the record of this case, I find that the ALJ's decision is supported by substantial evidence and there was no improper application of the law. Therefore, the ALJ's decision is affirmed.


DATED at Denver, Colorado, on September 25, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge